# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL BERRYMAN, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:15-cv-00227-JMS-MJD |
| OFFICER BOOKER, OFFICER M. COX, OFFICER MORRISON, | ) |
| Defendants. | ) |

**Entry Discussing Defendants' Motion for Summary Judgment
and Other Pending Motions and Directing Entry of Final Judgment**

For the reasons explained in this Entry, the motion for summary judgment filed by defendant Officers Booker and Cox, dkt. [121], is **granted.**

## I. Background

Plaintiff Michael Berryman brings this action under the theory of *Bivens v. Six Unknown Named Agents,* 403 U.S. 388 (1971). Mr. Berryman at all times relevant to this action was incarcerated at the Federal Correctional Institution in Terre Haute, Indiana ("FCI-TH").

Mr. Berryman alleges that on or about August 14, 2013, after a stay in a hospital he was returned to FCI-TH and was placed in a small holding cell. He was verbally harassed by Officers Booker and Cox. Mr. Berryman struck his forehead on the door bars, causing cuts on his forehead. He was taken to medical, where he refused treatment and refused to talk to anyone. He alleges that Officer Booker placed him in hard restraints consisting of a steel belly chain, steel handcuffs, and a black box over the cuffs, rendering him unable to move his hands. He further alleges that the chain and cuffs were excessively tight, causing severe pain and swelling in his hands, right wrist, and kidneys. He was unable to use the restroom without soiling himself

because he was unable to lift the smock he had to wear. He also was unable to eat, drink, or take his medication. These conditions lasted 72 hours. He also alleges that Officer Cox videotaped and Officer Morrison watched the placement of the restraints on Mr. Berryman but did nothing to remedy the situation.

The defendants remaining after the Court screened the complaint are: 1) Officer Booker; 2) Officer M. Cox; and 3) Officer Morrison. The U.S. Marshal attempted to serve defendant Officer Morrison but reported that Officer Denny Morris is deceased and there is no Officer Morrison employed at FCI-TH. Dkt. 26. No motion to substitute a party for the claim against Officer Morris has been filed. Dkt. 29; dkt. 33.[1]

Officers Booker and Cox seek resolution of Mr. Berryman's claims through the entry of summary judgment. Dkt. 121. Mr. Berryman has opposed the motion, dkt. 138, the moving defendants replied, dkt. 140, and Mr. Berryman filed an additional declaration, dkt. 141.

## II. Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

---

[1] Even if another party had been substituted for Officer Morris, that party would be entitled to summary judgment in its favor. The Seventh Circuit has said that "where one defendant files a motion for summary judgment which the court grants, the district court may *sua sponte* enter summary judgment in favor of additional non-moving defendants if the motion raised by the first defendant is equally effective in barring the claim against the other defendants and the plaintiff had an adequate opportunity to argue in opposition to the motion." *Malak v. Assoc. Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986); *Acequia, Inc. v. Prudential Ins. Co. of America*, 226 F.3d 798, 807 (7th Cir. 2000) ("where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition"). Mr. Berryman had an adequate opportunity to respond to the motion for summary judgment and he did, in fact, respond. The Court therefore treats the moving defendants' motion for summary judgment as also effective as to any claim asserted against defendant Officer Morris.

242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

### III. Discussion

#### A. Undisputed Facts

The following statement of facts was evaluated pursuant to the standards set forth above. That is, this statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Mr. Berryman as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

**1. The August 14, 2013 Application of Ambulatory Restraints**

On August 8, 2013, while he was incarcerated at the FCI-TH, Mr. Berryman was transferred to Union Hospital after he intentionally overdosed on his metoprolol blood pressure medication. Dkt. 121-1, ¶¶ 6-7. Mr. Berryman was discharged from Union Hospital on the morning of August 14, 2013, and returned to the Special Housing Unit ("SHU") at FCI-TH. Dkt. 121-2, ¶ 2; dkt. 121-3, ¶ 3.

At approximately 1:40 p.m. on August 14, 2013, while Mr. Berryman was in a holding cell in the FCI-TH SHU, Senior Officer Specialist Denny Morris saw Mr. Berryman strike his head on the door of the holding cell. Dkt. 121-5, ¶ 5 (Declaration of Lt. David Puthoff); dkt. 124-2, p. 2. Lt. Puthoff was notified of the situation and reported to the SHU. *Id.* At approximately 1:45 p.m., Mr. Berryman was ordered to submit to restraints. Dkt. 121-5, ¶ 6. Mr. Berryman complied and Officer Morris placed Mr. Berryman into ambulatory restraints consisting of handcuffs, a black box, a martin chain, a padlock, and leg irons. Dkt. 121-5, ¶ 6; dkt. 124-1; dkt.

124-2. Neither Officer Booker nor Officer Cox were involved in applying the ambulatory restraints to Mr. Berryman. Dkt. 121-3, ¶ 6; dkt. 121-4, ¶ 6; dkt. 121-5, ¶¶ 6-7 (Lt. Puthoff Declaration stating that he witnessed Officer Morris place ambulatory restraints on Mr. Berryman); dkt. 128 (video clip identifying the individuals involved in the August 14 incident).

At 1:52 p.m., RN David Decker arrived at the SHU to assess Mr. Berryman's injuries and check his restraints. Dkt. 121-5, ¶ 8; dkt. 124-2; dkt. 124-3. RN Decker noted that Mr. Berryman had "multiple lacerations to the forehead." Dkt. 124-3. Mr. Berryman refused see the doctor, refused to allow RN Decker to clean or suture his wounds, and he refused to sign a refusal of medical treatment form. *Id.*; *see also* dkt. 121-5, ¶ 8. Senior Officer Specialist Ron Roberson videotaped RN Decker's restraint check of Mr. Berryman. Dkt. 121-5, ¶ 9; dkt. 124-4; dkt. 128. Neither Officer Booker nor Officer Cox videotaped the restraint check, the medical assessment, or the application of Mr. Berryman's restraints. Dkt. 121-3, ¶ 7; dkt. 121-4, ¶ 7; *see also* dkt. 121-5, ¶¶ 7, 9 (Lt. Puthoff's Declaration stating that the application of the ambulatory restraints was not videotaped because it was believed that any delay in applying the restraints could result in Mr. Berryman doing further injury to himself, and identifying Officer Roberson as the individual who videotaped the restraint check).

At approximately 1:55 p.m., Dr. Brandi Reynolds, Ph.D., arrived at the SHU to evaluate Mr. Berryman. Dkt. 121-5, ¶ 10; dkt. 124-6. Dr. Reynolds subsequently reported that Mr. Berryman had declared that "he planned to continue to engage in disruptive and self-harm behaviors unless given a single cell." Dkt. 124-6. She also noted Mr. Berryman's "self-reported lengthy history of engaging in self-harm…." *Id.* Mr. Berryman had previously overdosed on prescribed medication, engaged in hunger strikes, and had begun banging his head to cause harm to himself. *Id*. Based on Mr. Berryman's history of self-harm, and after consultation with Captain

Stanley Lovett and Warden John Oliver, it was determined that ambulatory restraints were the least restrictive means necessary to maintain Mr. Berryman's safety until he was able to regain control of his emotions. *Id.*; *see also* dkt. 121-5, ¶ 11; dkt. 124-2.

### 2. Mr. Berryman's Monitoring on August 14, 15, 16, and 17, 2013

Between August 14, 2013 at 1:45 p.m., when Mr. Berryman's ambulatory restraints were applied, and 9:15 a.m. on August 17, 2013, when the restraints were removed, Mr. Berryman was monitored every 15 minutes by members of the Bureau of Prison's ("BOP") custodial staff. Dkt. 121-5, ¶ 15; dkt. 124-8. The custodial staff members who monitored Mr. Berryman over this time period were: Senior Officer Specialist Denny Morris, Senior Officer John Hill, Senior Officer Specialist Robert Johnston, Senior Officer Andrew Neff, and Senior Officer Specialist Zachary Brooks. Dkt. 121-5, Decl. ¶ 15; dkt. 124-8. Neither Officer Booker nor Officer Cox were involved in monitoring Mr. Berryman on August 14, 15, 16, or 17. Dkt. 121-3, ¶¶ 8-9; dkt. 121-4, ¶ 8.

At approximately 1:52 p.m. on August 14, 2013, RN Decker performed the first of eighteen Health Services restraint checks on Mr. Berryman. Dkt. 124-9, p. 2; *see also* Lt. Puthoff Decl. dkt. 121-5, ¶ 8. RN Decker noted that Mr. Berryman's restraints were "tight enough to restrain [but] loose enough for circulation." Dkt. 124-9, p. 2; *see also* dkt. 128. Mr. Berryman was seen approximately every 4 hours by BOP Health Services staff members on August 14, 15, 16, and 17. Dkt. 121-5, ¶ 16; dkt. 124-9. Mr. Berryman's restraints were noted to be tight enough to restrain him, but loose enough to allow circulation. Dkt. 124-9. The Health Services staff members also noted that Mr. Berryman had a toilet in his cell, free access to water, and was to be provided food at regular meal times. *Id.* Mr. Berryman's prescription medications were administered by Health Services staff members, and Mr. Berryman's restraints were loosened or

adjusted as necessary. *See, e.g.* dkt. 124-9, p. 4 (noting that Mr. Berryman took 100 mg of prescribed gabapentin at 6:30 a.m. on August 15, 2013); dkt. 124-9, p. 13 (noting that Mr. Berryman's right hand restraint was "loosened 1 notch" at 1:45 a.m. on August 17, 2013).

In addition to the medical monitoring and the 15-minute custodial monitoring, Lieutenants David Puthoff, Brenton Myers, Charles Wingerd, Deborah Moore, Andrew Clark, Bryan Johnson, Everett Snyder, and Captain Stanley Lovett, checked on Mr. Berryman every two hours between 1:45 p.m. on August 14, 2013, when Mr. Berryman was placed in restraints, and 9:15 a.m. on August 17, 2013, when Mr. Berryman's restraints were removed. Dkt. 121-5, ¶¶ 13-14; dkt. 124-7.

**3. BOP Program Statement 5566.06**

BOP Program Statement 5566.06 (the "Program Statement") provides instruction and guidance on the "Use of Force and Application of Restraints." Dkt. 121-6, Declaration of Warden Jeffrey Krueger, ¶ 4; *see also* dkt. 121-7, Ex. 1 to Krueger Decl. The Program Statement provides that when inmates engage in self-harming behavior that "constitutes an immediate, serious threat to the inmate, staff, others, property, or to institution security and good order," BOP staff members are authorized to "immediately use force and/or apply restraints." Dkt. 121-6, ¶ 5; dkt. 121-7, p. 4. "When immediate use of restraints is indicated, staff may temporarily apply such restraints to an inmate to prevent that inmate from hurting [him]self . . . . When the temporary application of restraints is determined necessary, and after staff have gained control of the inmate, the Warden or [a] designee is to be notified immediately for a decision on whether the use of restraints should continue." Dkt. 121-7, p. 7; *see also* dkt. 121-6, ¶¶ 5-7. "Restraints should remain on the inmate until self-control is regained." Dkt. 121-7, p. 8.

The decision to maintain an inmate in restraints is made by the Warden after he or she reviews the reports and documentation from participating staff members, including Health Services staff members, psychology staff members, and Correctional Services staff members. Dkt. 121-6, ¶ 8. If an inmate is maintained in restraints for 8 hours or more, the Warden notifies the Regional Director. Dkt. 121-6, ¶ 10; dkt. 121-7, p. 16. The Warden continues to report to the Regional Director every 8 hours until the inmate is released from restraints. *Id.* In addition, within 24 hours of the inmate's placement in restraints, a review of the inmate's status is performed and a behavior management plan is prepared. *Id.* In this case, Warden Oliver reported to the Regional Director at 2:00 p.m. on August 14, 2013, 10:00 p.m. on August 14, 2013, 6:00 a.m. on August 15, 2013, 2:00 p.m. on August 15, 2013, 10:00 p.m. on August 15, 2013, 6:00 a.m. on August 16, 2013, 2:00 p.m. on August 16, 2013, 10:00 p.m. on August 16, 2013, and 6:00 a.m. on August 17, 2013, and the 24-hour review occurred on August 15, 2013, at 1:30 p.m. Dkt. 121-6, ¶¶ 11-12.

The Program Statement defines "ambulatory restraints" as "approved soft and hard restraint equipment which allow the inmate to eat, drink, and take care of basic human needs without staff intervention." Dkt. 121-7, p. 12. Inmates placed in ambulatory restraints are monitored every 15 minutes by members of the correctional staff, every 2 hours by a lieutenant, and at least every 24 hours by medical and psychology staff members. Dkt. 121-6, ¶ 9; dkt. 121-7, pp. 19-20. This monitoring is designed to ensure that the restraints are not hampering the inmate's circulation as well as to check the inmate's general welfare. Dkt. 121-7, p. 13. Staff members conducting the monitoring are instructed to "look for a pattern of non-disruptive behavior over a period of time as an indication the inmate has regained self-control and is no longer a disruptive threat" so that the restraints can be removed. *Id.* at p. 12.

The Program Statement also provides that incidents involving the use of force and the application of restraints must be "carefully documented," which includes filming the incident "whenever practicable." *Id.* at p. 9; *see also* dkt. 121-6, ¶¶ 13-14; dkt. 121-7, p. 20 (providing that staff "must obtain a video camera immediately and record any use of force incident, unless it is determined that a delay in resolving the situation would endanger the inmate, [or] staff…" and explaining that "[w]hen a threat to the safety of the inmate [or[ staff. . . requires an immediate response, staff are obligated to obtain a camera and begin recording the event as soon as feasible").

### B. Analysis

To be liable for any *Bivens* claim, each defendant must be directly or personally involved in the alleged constitutional deprivation. To be liable, "there must be individual participation and involvement by the defendant." *Arnett v. Webster,* 658 F.3d 742, 757 (7th Cir. 2011); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012). The analysis of the motion for summary judgment begins and ends with this point of law.

Mr. Berryman alleges in his complaint that on August 14, 2013, Officer Booker "applied a steel belly chain, steel handcuffs, and a black-box apparatus over the handcuffs onto Plaintiff. The belly chain was excessively tight on Plaintiff's waist causing grate [sic] pain in Plaintiff's kidneys and lower back when Plaintiff lay on it." Dkt. 1, p. 8. He further alleged that the handcuffs on his wrist "where [sic] extremely tight." *Id.* He alleges that Officer Cox videotaped the restraints while Officer Morrison [sic] watched. *Id.* Mr. Berryman alleges that Officers Morrison [sic] and Cox are liable because they "stood by and watched the restraints placed onto Plaintiff by Officer Booker and did nothing to intervene or to remedy the wrong." *Id.*

The Court has viewed the video evidence which was made immediately after the incident. Although there was no video of the actual placement of restraints on Mr. Berryman, Officer Morris stated on the video that he helped place Mr. Berryman in restraints. Dkt. 128. The video operator identified himself as Officer Ron Roberson. *Id.* No reasonable jury could view the video evidence and read the sworn statements of Officers Booker and Cox and find that either one of them participated in, observed, or recorded the placement of hard restraints on Mr. Berryman on August 14, 2013. The Court acknowledges that Mr. Berryman states in his declaration that the sworn declarations of Officers Booker and Cox, stating that they did not apply restraints on him, are "false." Dkt. 138-1; dkt. 141. His mere assertion that their statements are false, however, do not refute the report written by Officer Morris on August 14, 2013, stating that he applied the ambulatory restraints, and Lt. Puthoff's declaration stating that he observed Officer Morris apply the restraints at approximately 1:45 p.m. on August 14, 2013, much less the video evidence of Officer Morris stating that he applied the restraints on August 14, 2013. Dkt. 124-1, p. 2; dkt. 121-5, ¶ 7; dkt. 128. A significant twist on the normal standard of review is at play here: When the record evidence includes a videotape of the relevant events, the Court should not adopt the non-movant's version of the facts when that version contradicts what is depicted on the videotape. *Scott v. Harris*, 550 U.S. 372, 379-80 (2007) (where plaintiff's account of high-speed chase contradicted videotape of chase, and there were no allegations that videotape was "doctored or altered in any way, nor any contention that what it depicts differs from what actually happened," lower court "should have viewed the facts in the light depicted by the videotape").

Officer Booker testified in his sworn statement that he worked the morning shift on August 13, 2013, and that he was relieved by Senior Officer Robert Iseman at approximately

1:45 p.m. that day. Dkt. 121-3, ¶¶ 3-4. He testified further that he did not personally observe Mr. Berryman repeatedly striking his head on a cell door at approximately 1:40 p.m. that day. *Id.*, ¶ 5. Officer Booker did not apply restraints nor observe anyone else do so, nor did he videotape the application of restraints. *Id.*, ¶¶ 6-7.

Officer Cox, who allegedly videotaped the placement of the restraints, testified in his sworn affidavit to essentially the same facts as stated by Officer Booker. Dkt. 121-4. Officer Cox worked the morning shift that day, did not observe Mr. Berryman hitting his head against a cell door, and did not videotape any officer applying the restraints. *Id.*

Even if Mr. Berryman's assertion that the rest of the evidence presented is "false" was sufficient to create a genuine issue of material fact, his claims still fail on summary judgment. He alleges in his complaint that "there was no rationally related legitimate security purposes for the hard restraints and black-box and where [sic] used in a[n] excessive manner to any relational [sic] purposes." Dkt. 1, p. 6. He presents no evidence, other than his own conclusory opinion, that the restraints were placed on him in an unconstitutional manner.

"[W]hether a prison security measure violates the Eighth Amendment turns on whether 'force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *United States v. Waldman,* 835 F.3d 751, 755 (7th Cir. 2016) (quoting *Whitley v. Albers,* 475 U.S. 312, 320-21 (1986)). To prevail on an excessive force claim under these circumstances, a plaintiff must present sufficient evidence to support a finding that "there was an objective reason to believe that officers intended to cause sadistic and malicious harm." *Waldman,* 835 F.3d at 755. "A prisoner cannot prevail under the Eighth Amendment because he reasonably believed his handcuffs were too tight causing momentary interruption of his circulation." *Id.* (internal quotation omitted). "[C]orrections

officers face the difficult task of balancing the need to maintain or restore discipline through force against the risk of injury to inmates." *Id.* at 754-55.

The undisputed evidence shows that Mr. Berryman was placed in restraints because he was harming himself by hitting his head against a cell door and causing bleeding lacerations. He told officers he was not going to stop beating his head and was otherwise engaging in self-harming behavior. No reasonable jury could find that the restraints were not placed on Mr. Berryman in a good faith effort to restore discipline and prevent further harm to him.

For the reasons explained in this Entry, the motion for summary judgment filed by defendant Officers Booker and Cox, dkt. [121], is **granted.**

### IV. Conclusion

Mr. Berryman's motion to appoint counsel, dkt. [143], is **denied as moot.**

Mr. Berryman's motion requesting status of case, dkt. [144], is **granted** consistent with the findings issued in this Entry.

Defendant Officers Booker and Cox are entitled to summary judgment on Mr. Berryman's claims of excessive force and failure to intervene. Accordingly, their motion for summary judgment, dkt. [121], is **granted.** Judgment consistent with this Entry and with the screening Entry of October 6, 2015, dkt. [13], dismissing other claims, shall now issue.

**IT IS SO ORDERED.**

Date: 1/5/2018

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

MICHAEL BERRYMAN, 64649-051
FCI Butner
Inmate Mail/Parcels
P.O. Box 1000
Butner, North Carolina   27509

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov